UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELORES LEWIS,<br><br>        Plaintiff,<br><br>        v.<br><br>COUNTY OF COOK,<br><br>        Defendant. | Case No. 17-cv-08802<br><br>Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

Plaintiff Delores Lewis worked for Defendant Cook County's Bureau of Human Resources until she was terminated in 2015. Lewis sued her former employer, alleging race and age discrimination, as well as a violation of the consent decrees entered in *Shakman v. Democratic Organization of Cook County*, No. 69-cv-02145 (N.D. Ill.) ("*Shakman* Decrees"). The County moves for summary judgment on all claims [37]. Lewis has withdrawn her race discrimination claim (Count I) and requested that the court dismiss the claim; Count I is dismissed on that basis. For the reasons below, the court grants the County's summary judgment motion as to Counts II (age discrimination) and III (violation of *Shakman* Decrees).

## BACKGROUND

### I. The *Shakman* Decrees

The court begins with a brief recap of the history of the *Shakman* consent decrees. In 1969, Michael Shakman and another plaintiff brought a suit in the Northern District of Illinois challenging political patronage in the City of Chicago and Cook County. *Shakman v. Democratic Org. of Cook Cnty.*, 481 F. Supp. 1315, 1320–21 (N.D. Ill. 1979), *vacated sub nom. Shakman v. Dunne*, 829 F.2d 1387 (7th Cir. 1987). In 1972, the *Shakman* defendants entered into a consent decree prohibiting them from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 848 (7th Cir. 2005) (discussing history of *Shakman* decrees). Subsequently, another decree was entered to eliminate political influence over hiring practices. *Id.* at 848–49. As a result, except for certain exempt positions, it is unlawful for Cook County to take political

considerations into account in any employment actions, such as recruitment, hiring, promotions, terminations, or transfers. *Shakman v. Democratic Org. of Cook Cnty.*, 569 F. Supp. 177 (N.D. Ill. 1983).[1]

A Supplemental Relief Order ("SRO") in the *Shakman* litigation established a process for investigating and adjudicating claims of political discrimination or retaliation reported by county employees. *See Lanahan v. Cnty. of Cook*, No. 16-cv-11723, 2018 WL 1784139, at *1 (N.D. Ill. Apr. 13, 2018) (summarizing the SRO). The SRO provides that the Cook County Office of Independent Inspector General ("OIIG") will investigate claims arising after February 2, 2007. *Id.* at *1 & n.1. The OIIG issues findings to the *Shakman* compliance administrator (who oversees the SRO on behalf of the *Shakman* district court) and others. *Id.* at *1. The SRO allows claimants to seek a settlement conference with Cook County and, if the settlement conference is unsuccessful, to pursue arbitration. *Id.*

## II. Factual Background

In deciding Cook County's motion for summary judgment, the court views the evidence in the light most favorable to Lewis. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are undisputed unless otherwise noted. Lewis is a former Human Resources Assistant II for the Cook County Bureau of Human Resources ("BHR"). Pl.'s Resp. DSOF, [43] ¶ 1.[2] Lewis began working for the County in 1992, working first as a tax examiner through April 2000, and then in the highway department through 2013. Def.'s Resp. PSOF, [45] ¶ 1.

In 2010, Lewis sued the County for, among other things, alleged violations of the *Shakman* Consent Decrees. *See Lewis v. Cnty. of Cook*, No. 10-cv-01313, 2011 WL 839753 (N.D. Ill. Feb. 24, 2011). In 2011, Lewis entered into a settlement agreement with the County. Under that agreement, she received her human

---

[1] While this case was pending, the Seventh Circuit dissolved the 1972 *Shakman* decree as it applies to the Governor of Illinois, based on evidence of that office's substantial compliance with the terms of the decree, and principles of federalism. *Shakman v. Pritzker*, 43 F.4th 723, 732 (7th Cir. 2022). That decision was limited to the Office of the Governor. *Id.* (vacating "the 1972 consent decree as it applies to the Governor of Illinois"). That decision does not affect the application of the decrees to Cook County. The Seventh Circuit also recently affirmed a decision declining to vacate the decrees as applied to certain other government actors. *Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 835 (7th Cir. 2021).

[2] Bracketed numbers refer to docket entries and are followed by page and / or paragraph citations. Page numbers refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "Pl.'s Resp. DSOF" for Lewis's Response to the County's Statement of Undisputed Facts, [42], and "Def.'s Resp. PSOF" for the County's Response and Objections to Lewis's Statement of Additional Material Facts, [45]. (Both responses replicate the statements to which they respond, so for ease of reference the court cites the responses.)

resources assistant job title. Def.'s Resp. PSOF [45] ¶ 2. In 2013, the County dissolved the highway department and transferred Lewis to the BHR. *Id.*

In May 2014, Rebecca Strisko became BHR's Deputy Chief, and Lewis reported to Strisko. Pl.'s Resp. DSOF [42] ¶¶ 8, 10. Later that year, Lewis's job description was modified from mirroring her previous role in the highway department, to reflect that she now had a primary duty of conducting criminal background checks for new employees. *Id.* ¶ 11; Def.'s Resp. PSOF [45] ¶ 4. In February 2015, Lewis filed a complaint with the OIIG, in which she alleged that another BHR employee heard Strisko say that Lewis and two other employees "have to go." Strisko was notified about the complaint and provided a statement to the OIIG. Def.'s Resp. PSOF [45] ¶ 8.

In October 2015, the County informed Strisko that she would need to make personnel cuts to implement a Reduction in Force ("RIF"). Pl.'s Resp. DSOF [42] ¶ 13. BHR issued countywide layoffs, including within BHR. *Id.* ¶ 14. Martha Martinez, the interim Chief of BHR, told Strisko to cut two BHR positions. Def.'s Resp. PSOF [45] ¶¶ 3, 11. On October 6, Strisko recommended that Martinez eliminate the EEO Investigator I position (held by Susan Pracht) and Lewis's position, Human Resources Assistant II. *Id.* ¶¶ 115. Martinez approved the recommendation. Pl.'s Resp. DSOF [42] ¶20. On October 9, Strisko and Martinez met with Lewis and gave her a Notice of Layoff letter, which stated that she was being laid off because of budget cuts, not her work quality. *Id.* ¶¶ 25–26. The letter also explained how to apply to be on the recall list. *Id.* ¶ 26. Lewis was laid off on November 30. *Id.* ¶ 36. She was approximately 50 years old at the time. *See* [38-2].

The *Shakman* compliance administrator's office reviewed Lewis's termination and took no action. Pl.'s Resp. DSOF [42] ¶ 34. However, Strisko sent that office a copy of Lewis's highway department job description, rather than her updated BHR job description. Def.'s Resp. PSOF [45] ¶ 34. The compliance office concluded in part that "assuming that there is no other BHR job description for her position, BHR complied with the policy regarding layoff decisions." *Id.*

Lewis requested placement on the recall list. Pl.'s Resp. DSOF [42] ¶ 55. It is County policy that all employees laid off for budgetary reasons may be placed on this list if they timely apply. Def.'s Resp. PSOF [45] ¶ 22. Employees remain on this list until they are re-employed or two years have passed, whichever comes first. *Id.* If an employee is offered a position in the "same classification" and declines, the employee is removed from the list. *Id.* Lewis's recall expiration date was November 30, 2017. *Id.* ¶ 20. Strisko testified that an employee on the recall list can be recalled only into a position with the same classification or title. [43-2] at 17. Lewis's eliminated position was the only one in its title and classification, and no one was rehired to that position. Pl.'s Resp. DSOF [42] ¶¶ 55–57.

3

### III. Procedural History

On October 29, 2015, Plaintiff filed a post-SRO complaint with the OIIG (i.e., a complaint filed after the SRO was entered, which is to be investigated according to the SRO's terms), alleging that her termination constituted retaliation and political discrimination against her earlier involvement with the OIIG. Pl.'s Resp. DSOF [42] ¶¶ 38–39. The OIIG conducted an investigation and issued a post-SRO investigation report on July 25, 2017. *Id.* The OIIG concluded that "impermissible political factors were not considered in any employment decision involving the complainant," and that there was no evidence that Lewis's involvement with the OIIG played a role in her termination. *Id.* ¶¶ 40–43.

Separately, on August 2, 2016, Lewis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 3; *see also* [38-2]. In that charge, Lewis alleged that her termination was a result of race and age discrimination. *See* [38-2] at 2. After the EEOC concluded its investigation and issued a right to sue letter, Lewis brought this action. *See* [8] ¶ 3. The County moved for summary judgment on Lewis's race discrimination, age discrimination, and *Shakman* violation claims. [37]. Lewis has withdrawn her race discrimination claim and requested that the court dismiss the claim (Count I). *See* [41] at 8.

## DISCUSSION

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation and footnote omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [the non-moving party's] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

4

### I. Age Discrimination

The court begins with Lewis's claim that the County discriminated against her based on age.[3] Lewis appears to argue that both the County's decision to fire her and the County's failure to subsequently rehire her were instances of age discrimination. Regarding claims for age discrimination, under the Age Discrimination in Employment Act (ADEA) and EEOC charges, the Seventh Circuit has held that:

> As a general rule, any claim that an ADEA plaintiff wishes to pursue in federal court must first be presented to the EEOC. This rule is designed to give the employer some warning of the conduct about which the employee is aggrieved, and it affords the EEOC and the employer an opportunity to attempt conciliation without resort to the courts. We have, however, recognized an exception to this general rule. If a claim not asserted in an EEOC charge is 'reasonably related' to a claim that was included in the EEOC charge, the plaintiff may pursue that claim in court. We have held that a claim in a judicial complaint is reasonably related to an EEOC charge if the claim in the complaint can reasonably be expected to grow out of an investigation of the allegations in the charge.

*Sauzek v. Exxon Coal USA*, Inc., 202 F.3d 913, 920 (7th Cir. 2000) (citations, internal quotation marks, and brackets omitted).

The Seventh Circuit has also held that "a failure to rehire claim is not reasonably related to a previously filed EEOC charge alleging a discriminatory termination." *Id.* (citing *Oxman v. WLS-TV*, 12 F.3d 652, 660–61 (7th Cir. 1993)). In order to bring a claim based on both a termination and a failure to rehire, a plaintiff must include "both allegations in charges with the EEOC." *Id.* Lewis's August 2, 2016 EEOC charge relies only on her layoff and does not mention the County's subsequent failure to rehire her. *See* [38-2]. Accordingly, Lewis may pursue an age discrimination claim based only on her termination.

Turning to the merits, the ADEA protects workers forty years and older and prohibits employers from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such

---

[3] Plaintiff's complaint alleges age discrimination under Title VII rather than the ADEA. However, "[c]iting the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion . . . and the defendant is not harmed by the delay in correction." *Hatmaker v. Mem. Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). Lewis has clarified that she is pursuing an age discrimination claim under the ADEA. *See* [41] at 8. There is no dispute as to the proper legal framework.

individual's age." 29 U.S.C. § 623(a)(1). Under the framework set forth in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), Lewis must point to evidence that, "considered as a whole," would allow a reasonable jury to find that her age caused her termination. *Id.* at 765; *see also Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 719 (7th Cir. 2018) ("Because plaintiff seeks to recover under a theory of disparate treatment, [plaintiff] must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action.") (internal quotation marks omitted).

To meet this burden, Lewis relies on the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quotation omitted). That framework is not the only method a reasonable jury could use to find age discrimination. *See Volling v. Kurtz Paramed. Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that *McDonnell Douglas* provides "a common, but not exclusive, method of establishing a triable issue of intentional discrimination") (quotation omitted). Accordingly, the court assesses Lewis's discrimination claim under the *McDonnell Douglas* framework but also considers the evidence "as a whole." *Ortiz*, 834 F.3d at 765.

To establish a prima facie case of discrimination under *McDonnell Douglas*, Lewis must show that (1) she is a member of a protected class; (2) her job performance met the County's legitimate expectations; (3) she suffered an adverse employment action; and (4) the County treated another similarly situated employee who was not a member of the protected class more favorably. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If Lewis can establish a prima facie case, then the burden shifts to the County to provide a legitimate, nondiscriminatory reason for the adverse action. *Coleman v. Donahue*, 667 F.3d 835, 845 (7th Cir. 2012). If the County successfully rebuts the prima facie case, then the burden shifts back to Lewis, "who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).

### A. Similarly Situated Employees

The parties do not dispute that Lewis is a member of a protected class based on her age, that she met the County's job expectations, or that her termination constituted an adverse action. However, the County argues that Lewis cannot show that she was treated less favorably than similarly situated younger employees. "Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman*, 667 F.3d at 846 (quotations omitted). This "flexible, common-sense, and factual" inquiry considers "whether the employees (i) held the same job description,

(ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *David*, 846 F.3d at 225–26 (citations omitted).

Although Lewis was the only employee in her job title and classification, she argues that her duties were similar to administrative assistant duties. To make this argument, she relies on job descriptions. The "Administrative Assistant IV" position had duties "related to processing and advising employees returning from medical leave of absence" and "[f]ills in for the Administrative Assistant to the Human Resources Bureau Chief on a regular basis." Def.'s Resp. PSOF [45] ¶ 17. The "Administrative Assistant V" position engaged in "highly specialized and confidential work in the capacity of Executive Secretary to the Chief of the Human Resources Bureau" and provided "assistance to Chief, Deputy Chief and other Human Resource managers." *Id.* Lewis argues that since these descriptions include some duties similar to her own, employees in those positions are appropriate comparators. However, she does not explain her reasoning further, and these job descriptions differ in several respects from the description of Lewis's "Human Resources Assistant II" role, which required the employee to, for example, "assist[] in the development and implementation of personnel policies and procedures"; "prepare[] and maintain employee handbook and policies and procedures"; coordinate responses to FOIA requests; assist with "research projects"; and respond to inquiries from "operating departments, County employees, candidates, and the general public." *See* [43-7] at 2–3.

Lewis argues that the "most directly comparable" employee was Tamika Brown, who was 31 years old in 2015. [41] at 9; *see also* Def.'s Resp. PSOF [45] ¶ 32. Brown was hired as an "Administrative Assistant IV" on June 1, 2015. She was within her probationary period at the time of Lewis's layoff. Def.'s Resp. PSOF [45] ¶ 28. Lewis also argues that Nicole Riley is a comparable employee. After Lewis was laid off, Riley took over Lewis's previous background check duties. Riley was a business manager, and her job duties did not include background checks until after Lewis was laid off. *Id.* ¶ 18. In 2015, Riley was 36 years old. *Id.* ¶ 32.

With respect to both Brown and Riley, Lewis has not pointed to sufficient evidence that would "allow a factfinder to conduct a 'meaningful comparison.'" *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (quoting *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). It is Lewis's burden to provide "amplifying detail" of the similarly situated employees' "qualifications or employment history that would allow" the court "to comfortably conclude their hiring was the result of discriminatory motive rather than some other explanatory variable." *Skiba*, 884 F.3d at 723. In *Skiba*, the Seventh Circuit held that comparator evidence consisting "solely of a table listing the names and ages of the thirty-seven younger employees and the positions for which they were hired" was insufficient to meet this standard, and affirmed the district court's grant

7

of summary judgment to the defendant. *Id.* at 723, 726. Lewis has similarly provided the court with "a chart outlining the names, year of birth, dates of hire and positions for employees comparable to Plaintiff." [41] at 7. Lewis does not develop these comparisons further.

Lewis argues that both she and Brown performed administrative functions and reported to a director level position, and that Riley eventually performed the same background check duties Lewis had before her role was eliminated. However, Lewis, Brown, and Riley had different job titles, job descriptions, and levels of work experience. True, comparability turns on "real-world experience," and differences in job descriptions are not dispositive. *See Parks v. Phillip Rock Ctr. & Sch.*, No. 18-cv-1523, 2020 WL 1304751, at *7 (N.D. Ill. Mar. 19, 2020). But Lewis does not point to any evidence about Brown's substantive day-to-day job duties that would allow a meaningful comparison between the two roles. Summary judgment is warranted in the absence of evidence on this point. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). No reasonable factfinder could decide based on this record that Lewis has established a prima facie case of age discrimination.

### B.   Pretext

Even assuming that the proposed comparators had been similarly situated, the County has offered a legitimate, nondiscriminatory rationale for terminating Lewis. Strisko and Martinez had to eliminate two positions as part of the 2015 RIF. Of course, "[p]retext may be shown by demonstrating that the reduction in force was an excuse to get rid of workers belonging to the protected group." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000). Even though the parties do not dispute that Lewis's role was eliminated pursuant to a RIF, Lewis is entitled to prove that the "specific reasons given for including her in the reduction were pretextual." *Id.* at 1013. In her memorandum to Martinez, Strisko explained that Lewis's position could be eliminated because it had duties that could be absorbed by other employees. [43-10] at 2. This nondiscriminatory rationale shifts the burden back to Lewis to present evidence showing that this was not the real reason her role was eliminated. *See Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020). The Seventh Circuit has "repeatedly emphasized that when assessing a plaintiff's claim that an employer's explanation is pretextual, we do not second-guess an employer's facially legitimate business decisions. . . . An employer's reasons for firing an employee can be foolish or trivial or even baseless, as long as they are honestly believed." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (citations, internal quotation marks, and alterations omitted).

Lewis first argues that favorable treatment of similarly situated employees can serve as evidence of pretext. *See Barnes*, 946 F.3d at 389 (noting that "the prima facie and pretext inquiry often overlap"). This argument is not persuasive because, as discussed above, Lewis has not identified evidence allowing a meaningful comparison between herself and the proposed comparators.

8

Next, Lewis argues that various inconsistencies undermine the stated explanation of why she was terminated. Strisko testified that, in reaching the decision to eliminate Lewis's position, Strisko and Martinez evaluated duties and roles to determine which positions had duties that other employees could take over. Def.'s Resp. PSOF [45] ¶ 12. Strisko further testified that, in addition to the positions that were eliminated, they considered eliminating a vacant training coordinator position. [43-2] at 16. She could not specifically recall any other position that was under consideration. [43-2] at 16. Strisko testified that she and Martinez opted not to eliminate the vacant position because a robust training function was a higher priority for human resources. Def.'s Resp. PSOF [45] ¶ 14. However, Lewis argues that a chart of new hires shows that the vacant position was not filled until May 2018, demonstrating that it could not have been a high priority. *Id.*; [41] at 4.[4]

Lewis contends that this is evidence of pretext. But this is really an argument about the wisdom of the rationale. Lewis has not produced evidence showing that at the time the decision was made, Strisko did not actually prioritize training above the duties performed by Lewis. In *Fairchild v. Forma Sci., Inc.*, 147 F.3d 567 (7th Cir. 1998), the plaintiff argued that the stated reason for his termination—a reorganization—did not actually occur. The parties did not dispute that the decisionmaker was "asked to reduce his budget." *Id.* at 573. Given this fact, *Fairchild* held that it made "little difference" to the age discrimination analysis whether the decisionmaker implemented this mandate "through a 'reorganization' properly so called or through firing a couple people and temporarily redrawing territorial lines." *Id. Fairchild* observed: "[i]n a reduction in force, someone has to go." *Id.* The same is true here. Strisko was asked to eliminate two positions. Lewis has not presented evidence suggesting that Strisko did not actually estimate the relative need for different roles at the time, and the court cannot opine on whether her analysis of BHR's relative need for certain roles was wise in hindsight.

Lewis also notes that BHR hired Regina Crider as an "Administrative Assistant V" on November 2, 2015. Def.'s Resp. PSOF [45] ¶ 29. She argues that since Crider was hired to perform duties similar to Lewis's, Crider's hiring undermines the credibility of Strisko's explanation. But Crider was 54 years old at the time, and thus older than Lewis. *Id.* ¶ 32; [8] ¶ 12. Lewis does not explain how the hiring of Crider could support an inference of age discrimination. Additionally, BHR hired Tiffany Sims as an "Administrative Assistant IV" on February 1, 2016. Def.'s Resp. PSOF [45] ¶ 29. In 2015, Sims was 31 years old. *Id.* ¶ 32. As discussed above, however, Lewis has not adequately developed any comparison between her

---

[4] While the County denies that this claim is supported by the record, Def.'s Resp. PSOF, [45] ¶ 14, it does not explain its objection further, argue that the chart is inaccurate, or point to additional evidence showing that the vacant position was filled earlier. The court expresses no view on this factual dispute, since it is ultimately immaterial to the analysis.

9

role and the administrative assistant roles. Moreover, Lewis has pointed to two post-termination administrative assistant hires and only one of them was younger than Lewis. No reasonable factfinder could decide that this evidence supports an inference of age discrimination.

Additionally, part of Strisko's rationale for eliminating Lewis's position was Strisko's belief that other employees already carried out some of Lewis's job duties. In her memorandum to Martinez, Strisko wrote, "BHR does not have a need for a position at this level performing these duties. Many of these duties are already performed by the Deputy Bureau Chief and the Director of Policy. For new employee background checks, the printing and initial review of reports can be transferred to administrative staff." [43-10] at 2. Lewis argues that this rationale was false, and that no one else performed her duties. But Lewis does not dispute that Angela Thomas, the Director of Policy, performed her job duties when she was on medical leave. Pl.'s Resp. DSOF [42] ¶ 9. Lewis also testified that Strisko had performed background checks. [43-1] at 39. Strisko ultimately gave Lewis's background check duties to Riley, a business manager who had not previously done background checks. Def.'s Resp. PSOF [45] ¶ 18. But this is not necessarily inconsistent with Strisko's memorandum, which stated that "many" of Lewis's duties were already performed by others, and suggested transferring background check duties to employees who were presumably not already performing them. [43-10] at 2.

Finally, Lewis points out that in February 2015, another BHR employee told her that she overheard Strisko say that Lewis and two other employees "have to go." [43-1] at 37–38. "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Since Lewis is offering another employee's statement (that was not made at a trial or hearing) for the truth of the matter asserted—in other words, to show that Strisko said Lewis and other employees "had to go"—this statement is hearsay. In fact, it is hearsay within hearsay because Lewis only heard Strisko's alleged statement secondhand from the unnamed employee. *See* Fed. R. Evid. 801(c). Both levels of hearsay would have to be overcome for this evidence to be considered at summary judgment. Accordingly, the court will not consider this evidence at summary judgment.

Taken together, Lewis's cited evidence does not create a triable issue of fact as to whether the County's nondiscriminatory rationale for Lewis's termination was pretextual. Since Lewis has not carried her burden of showing that similarly situated employees were treated more favorably or that the County's rationale was pretextual, Lewis cannot defeat summary judgment using the *McDonnell Douglas* framework. Furthermore, the evidence as a whole does not support Lewis's age discrimination claim. *See Ortiz*, 834 F.3d at 766 ("all evidence belongs in a single pile and must be evaluated as a whole"). Here, the totality of the evidence in the record would not permit a reasonable factfinder to conclude that Lewis's age caused

her termination. *Id.* at 764. The county's motion for summary judgment is granted with respect to Lewis's age discrimination claim.

## II. *Shakman* Violation

The County also moves for summary judgment on Lewis's *Shakman* claim. Lewis argues that Cook County violated the consent decrees in *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), when it terminated her and failed to subsequently rehire her. The *Shakman* decrees "reflect one of the First Amendment's proscriptions—that is, the general prohibition of patronage-based employment decisions." *Houlihan v. City of Chicago*, 871 F.3d 540, 548 (7th Cir. 2017). Unlike a constitutional tort claim under Section 1983, a *Shakman* claim is "for civil contempt of court."[5] *Id.* at 549. To prove a *Shakman* violation, Lewis must "present clear and convincing evidence showing that 'a political reason or factor was the cause of [an] adverse employment action.'" *Id.* (quoting *Bonnstetter v. City of Chi.*, 811 F.3d 969, 973 (7th Cir. 2016)). "This kind of 'but-for' causation means that the alleged adverse action would not have occurred absent the prohibited political considerations." *Pillows v. Cook Cnty. Recorder of Deeds Office*, No. 18-cv-7497, 2019 WL 2524149, at *3 (N.D. Ill. June 18, 2019).

To advance a *Shakman* claim, Lewis must point to an adverse employment action. She argues that there were two: (1) the County decided to lay her off "based on politics due to her *Shakman* history" and (2) the County failed to recall her to a BHR position because it engaged in political patronage. [41] at 13. The court first addresses the County's decision to eliminate Lewis's role and then turns to the County's failure to rehire Lewis.

### A. Reduction in Force

To prove a *Shakman* violation, Lewis must show that the County eliminated her role for a political reason, meaning a reason related to her "political affiliations, beliefs, or activities." *Bonnstetter*, 811 F.3d at 974. Lewis contends that Strisko and Martinez eliminated her role because she was involved in OIIG investigations. A threshold issue, then, is whether Lewis's OIIG complaints and involvement in investigations were political activities. As under the First Amendment, Lewis must

---

[5] Both parties cite cases involving First Amendment retaliation claims under 42 U.S.C. § 1983. Lewis asserts a claim under *Shakman*, not Section 1983. [8] at 7. And the only defendant in this case is Cook County, which can be liable for constitutional injuries under Section 1983 only if those injuries were caused by the County's policy or custom. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Since Lewis has not argued that there are any facts in the record supporting *Monell* liability, she does not have a claim under Section 1983. While both *Shakman* and Section 1983 retaliation claims ultimately stem from the First Amendment, there are some differences between these types of claims. *See Smith v. City of Chicago*, 820 F.2d 916, 917–18 (7th Cir. 1987) (discussing these differences).

11

"present evidence that [her] speech (or conduct) was constitutionally protected." *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996). If she does not, her *Shakman* claim cannot succeed. *See Rinella v. City of Chicago*, No. 16-cv-04088, 2016 WL 7241185, at *4 (N.D. Ill. Dec. 14, 2016).

As discussed above, in February 2015, Lewis filed a complaint with the OIIG that another BHR employee heard Strisko say that Lewis and two other employees "have to go." Strisko was notified about the complaint and provided a statement to the OIIG. Lewis testified that she believes that the County retaliated against her not only because she filed this complaint, but also because she participated in a variety of OIIG investigations during her time at BHR. [43-1] at 13–14. While Lewis did not know whether either Strisko or Martinez had been aware of her involvement in any given investigation, she testified that she made it clear that if she saw something, she "would say something." [43-1] at 19. Lewis alludes to her political nonaffiliation. *See Hermes v. Hein*, 742 F.2d 350, 353 n.3 (7th Cir. 1984) ("It is undisputed that political nonaffiliation is a right protected under the first amendment."). But Lewis does not point to any facts in the record regarding her political nonaffiliation and does not link her OIIG involvement to her politics. None of this evidence shows that she was involved in OIIG investigations that concerned politics, rather than interpersonal disputes.

However, Lewis also appears to argue that her involvement with the OIIG, which was established in order to implement the *Shakman* consent decrees, inherently involved political activities. To assess whether an employee's speech addresses a matter of public concern for First Amendment purposes, courts look "to the content of the speech as a whole, as well as its form and context." *Lewis*, 2011 WL 839753, at *9 (quotations and citation omitted); *Connick v. Meyers*, 461 U.S. 138, 147–48 (1983). As other courts in this district have held, "retaliating against the plaintiff for exercising rights that were specifically granted to her by the SRO" can implicate a matter of public concern under the First Amendment. *Lewis*, 2011 WL 839753, at *10; *see also Fagbemi v. City of Chicago*, No. 08-cv-03736, 2010 WL 1193809, at *13 (N.D. Ill. Mar. 19, 2010) ("The context surrounding the *Shakman* consent decree—issued by a Federal District Court to ensure compliance with the Court's orders related to the City's hiring and promotional practices—also indicates that complaints to the Shakman Compliance Officer are likely to implicate matters of public concern about the City's promotional practices at large."); *Lanahan v. Cnty. of Cook*, No. 16-cv-11723, 2018 WL 1784139, at *8 (N.D. Ill. Apr. 13, 2018). Thus, while Lewis has provided scant details about the contents of the OIIG complaints and investigations in which she participated, this may not necessarily defeat her claim.

However, the court need not decide this question, because there is no evidence that Lewis's OIIG involvement caused Strisko and Martinez to eliminate her position.

To show causation, Lewis points to several pieces of circumstantial evidence. First, as discussed above, Strisko testified that she considered eliminating a vacant training coordinator position, but could not specifically recall any other position that was under consideration. Lewis argues that Strisko's apparent failure to consider eliminating any other roles shows that Strisko did not actually make her decision based on BHR's ability to absorb job duties. Second, Lewis again argues that Strisko's statement that the vacant training position was higher priority for BHR than her role was a lie because the vacant position was not filled until May 2018. As discussed above, the court is not persuaded that these facts indicate pretext. But even if these pieces of evidence could show that Strisko's rationale was pretextual, Lewis has not pointed to anything suggesting that the real rationale was political. *See Pillows*, 2019 WL 2524149, at *5 ("[E]ven if we assumed the falsity of the Recorder's Office's stated reason for laying off plaintiffs, this would not affirmatively translate into an inference that the real reason for plaintiffs' termination was their political affiliation."). Third, as discussed above, BHR hired Regina Crider as an "Administrative Assistant V." Lewis argues that her role was eliminated while Crider was hired into a similar role around the same time for political reasons. But, as discussed above, Lewis has not pointed to any evidence in the record supporting her claim that Crider's role was similar enough to allow a meaningful comparison. Moreover, even if Crider's hiring was political, nothing in the record connects that fact to Lewis's termination.

Ultimately, Lewis's only evidence of political retaliation is suspicious timing between her 2015 OIIG complaint and interactions and her termination. This is generally insufficient to show retaliation. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("[S]uspicious timing will rarely be sufficient in and of itself to create a triable issue.") (quotation marks omitted). For a plaintiff to rely on suspicious timing alone to defeat summary judgment, the adverse employment action must follow "close on the heels of protected expression," and the decisionmaker must have known about the protected conduct. *Id.* The evidence in the record is insufficient to satisfy either requirement.

Lewis argues that her termination was retaliation for her general involvement with the OIIG, but she has not put forward evidence that Strisko specifically knew about much of this conduct. Strisko testified that she could not recall Lewis participating in any OIIG investigations other than the 2015 complaint against her. [43-2] at 30. When asked whether Strisko and Martinez knew about her OIIG involvement, Lewis testified that she was "not sure." [43-1] at 19. "[S]heer speculation" about the decisionmaker's knowledge cannot defeat summary judgment. *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017) (assertion that "the Sheriff would know the cases in which he has been accused" of a *Shakman* violation was "speculation" that did not create a genuine issue of material fact).

The only evidence of Strisko's knowledge concerns Lewis's February 2015 OIIG complaint about Strisko. Strisko testified that she became aware of this

13

complaint sometime before the fall of 2015. [43-2] at 19. Lewis's last OIIG meeting was in August 2015. Pl.'s Resp. DSOF [42] ¶ 37.

Lewis's termination did not follow close on the heels of any OIIG involvement that Strisko knew about. Lewis asks the court to draw an inference of suspicious timing based on Strisko's knowledge of her OIIG complaint earlier in the year, and the decision to eliminate her position in October. In *Kidwell*, the Seventh Circuit explained that while the sufficiency of suspicious timing evidence is contextual, courts "typically allow no more than a few days to elapse between the protected activity and the adverse action." 679 F.3d at 966. There, adverse actions "more than two months later" and "approximately five weeks later" than the "act[s] of purportedly protected speech" were not "close on the heels" of the speech. *Id.* at 966–67. Here, Lewis's OIIG involvement in 2015 concluded several months before her termination. On its own, this timeline does not allow enough of an inference of suspicious timing to defeat summary judgment.

Moreover, where a "significant intervening event separates an employee's protected activity from the adverse employment action [the employee] receives, a suspicious-timing argument will not prevail." *Id.* at 967 (quotation marks and internal alterations omitted). Here, Martinez and Strisko were required to eliminate two positions in accordance with a RIF. Martinez did not tell Strisko to implement the RIF until October. Pl.'s Resp. DSOF, [42] ¶ 13. Lewis argues that while Martinez and Strisko were required to eliminate two positions, they chose to eliminate her position because of her OIIG involvement. But regardless, the RIF makes any inference based on timing alone weaker than it otherwise would have been. Given that the RIF was a major intervening event in the timeline, and that there was at least a gap of several months between Lewis's OIIG involvement and Lewis's termination, this is not the "rare case where temporal proximity alone creates a triable issue on causation." *Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 390 (7th Cir. 2012).

### B. Failure to Rehire

Lewis separately contends that the County decided not to rehire her for political reasons. Decisions not to rehire employees are within the scope of the *Shakman* Consent Decrees. *See Coleman v. Cnty. of Cook*, No. 10-cv-02388, 2011 WL 2647891, at *13 (N.D. Ill. June 22, 2011), *aff'd sub nom. Coleman v. Dunlap*, 695 F.3d 650 (7th Cir. 2012). Lewis does not dispute that since 2016, she applied for two positions (Ethics Investigator and Investigator II), and either withdrew from consideration or was not qualified for the positions. Pl.'s Resp. DSOF, [42] ¶ 62. On the other hand, since she was laid off for budgetary reasons, Lewis was on a county list of employees eligible for recall in certain circumstances. Lewis argues that regardless of whether she applied to a given role, she should have been recalled pursuant to County policy. She contends that she was not for political reasons.

14

Lewis argues that Strisko misinterpreted the County policy on rehiring employees on the recall list. As noted above, Strisko testified that an employee on that list can only be recalled into a position with the same classification or title. Since Lewis's eliminated position was the only one in its title and classification, Lewis was not eligible for recall. Strisko's interpretation of the policy ensured that Lewis was not considered for the positions Crider and Sims were hired for. But the accuracy of Strisko's interpretation is not itself evidence of a political consideration. Since there is no evidence suggesting that Strisko's testimony about her own subjective interpretation is false, there is no evidence that political considerations played a role in any decision not to recall Lewis. It is true that "[s]ignificant, unexplained or systematic deviations from established policies or practices can sometimes be probative of unlawful discriminatory intent." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 907 (7th Cir. 2015) (quotation omitted). But since there is no evidence that Strisko or anyone else at BHR interpreted the policy differently when making other personnel decisions, there is no evidence of a deviation from established policies or practices.

Finally, Lewis argues that BHR decided to hire Sims as an "Administrative Assistant IV" instead of Lewis for political reasons. As noted above, BHR hired Sims on February 1, 2016. Following an investigation in 2017, the OIIG determined that BHR violated the *Shakman* Decrees when it subsequently decided not to terminate Sims because of her political connections. It also determined that Sims's position was improperly classified as *Shakman* exempt. Def.'s Resp. PSOF [45] ¶ 31; [43-19]. Lewis argues that this shows BHR did not consider her for Sims's position because of politics. This argument cannot succeed for numerous reasons. First, there is no evidence in the record that Sims's hiring—as opposed to retention—violated the *Shakman* decrees. Second, even if BHR hired Sims for improper reasons, that would not give rise to a reasonable inference that BHR failed to hire Lewis for Sims's role for improper reasons. As a result of Strisko's interpretation of County policy, Lewis was not eligible to be recalled into the role of "Administrative Assistant IV." There is no evidence that had Sims not been hired, Lewis would have been hired instead. And finally, as with Lewis's other proposed comparators, Lewis has not developed a meaningful comparison between her role and Sims's role such that any differing treatment could provide evidence of improper political considerations.

In sum, no reasonable factfinder could infer that Lewis's involvement with the OIIG or any political factor played a role in either the County's decision to eliminate Lewis's role or any subsequent decision not to rehire her. Lewis has not presented evidence from which a reasonable trier of fact could find that the County violated the *Shakman* decrees. The County's motion for summary judgment with respect to this claim is granted.

15

## CONCLUSION

The motion for summary judgment [37] is granted as to Counts II and III. Count I is dismissed as withdrawn.

Date: September 30, 2022                /s/ Martha M. Pacold